Commonwealth *v.* Frazier, Appellant.

Argued January 11, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Morris Paul Baran,* with him *Harry D. Sporkin,* for appellant.

*David R. Scott,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice O'Brien, June 28, 1971:

This is an appeal from appellant's first-degree murder conviction and sentence to life imprisonment for his participation in the robbery-murder of Charles Mosicant. His appeal to the Superior Court from the judgment of sentence of ten to twenty years imprisonment on the aggravated robbery bill was also certified to this court in order that both appeals could be heard together. No question has been raised as to the sufficiency of the evidence or as to the substantive truth of appellant's self-incriminating statements which were used to convict him and which led to finding the murder weapon and some of the spoils of the robbery on persons named by appellant as collaborators in the crime. Instead, this appeal centers on the admissibility of the statement. Appellant contends that his statements were improperly admitted because he was not

given *Miranda* warnings at the proper time and because the statements were not voluntarily made.

The events which we must carefully examine began when Charles Mosicant's taproom was held up and he was murdered by three young men on December 15, 1967. The police had no suspects, but the Commonwealth contends that Homicide Detective Hoffman, who was in charge of the investigation, had a hunch that some rival gang might have been trying to frame the Sixteenth and Dauphin Street Gang (16-D) by coming into the 16-D's territory and committing the holdup-murder. Pursuant to this theory, on the orders of Hoffman, on December 19 at 8:30 a.m., Detectives Sincavaga and Williams went to appellant's home, saw him coming out of his home, and asked appellant to go with them to the Police Administration Building. Appellant and his older brother accompanied the two detectives to police headquarters.

When he got to the station house, appellant was interviewed so that an intelligence summary, consisting of his physical characteristics, residence, family connections, and gang affiliations, could be made. In addition, a Polaroid picture of appellant was taken. However, there was no interrogation as to the taproom robbery and slaying. After the intelligence summary was taken, appellant and his brother were left in a room off the interrogation room. Sometime thereafter, before the arrival of Detective Hoffman, appellant's brother left.

The suppression hearing judge found that when Detective Hoffman arrived, sometime after 3:00 p.m., he had no reason to suspect appellant, and, in fact, did not do so. In Detective Hoffman's own words, when he began talking to the appellant: "It was a general discussion at the beginning of what's going on out there, had they been warring, as stated before, with

anybody else; can he think of anybody that would come down into that territory to hang this thing on them to make it appear as if it was right in their territory."

Suddenly, however, Hoffman became suspicious that appellant himself might be involved in the murder. According to the detective, this suspicion was generated because: ". . . he was too evasive to his times. He couldn't remember people he was with on the Friday night."

According to the testimony, the detective immediately left the room, conferred with other officers, returned and warned appellant as to his constitutional rights. It is appellant's contention that these warnings came too late; that the constitution requires that warnings be given before any interrogation takes place.

Even if we were to accept appellant's view, i.e., that he should have been warned as soon as questioning began, it would not help to win him a reversal. As we said in *Commonwealth v. Moody*, 429 Pa. 39, 239 A. 2d 409 (1968): "A confession secured after the person involved has been adequately advised of his constitutional rights is not rendered inadmissible ipso facto because an earlier confession or inculpatory admission was made in the absence of a warning of these rights, Evans v. United States, 375 F. 2d 355 (8th Cir. 1967); United States v. Hickey, 247 F. Supp. 621 (E.D. Pa. 1965)."

In the instant case, nothing appellant said before he was warned was used to incriminate him. No other link was shown between the questioning to which appellant was subjected without warnings and his subsequent confession, made after proper warnings had been given. Consequently, his statements were properly admissible into evidence. *Commonwealth v. Moody, supra.*

Appellant also argues that his two written statements should have been held inadmissible at trial because they were involuntarily made. The *Jackson-Denno* judge and the court en banc found otherwise, choosing to disbelieve appellant's contentions at every point where they conflicted with the testimony of the police. We believe that the evidence supports the court's finding that the statements were properly admissible into evidence.

Appellant next argues that the conflicts between Detective Hoffman's testimony at the suppression hearing and his testimony at trial require the granting of a new suppression hearing. Appellant emphasizes that the detective testified at trial that he reported for duty on December 19, 1967, at 11:00 a.m., not 3:00 p.m., that he saw appellant between 11:00 a.m. and 12:00 Noon, rather than between 3:00 and 4:20 p.m., and that the first three entries in the police chronology at the suppression hearing were incorrect. However, the detective's testimony as to what particular events occurred was substantially the same on both occasions, and the substance of his testimony was that he only spoke to appellant for five to ten minutes and upon next returning, gave appellant his *Miranda* warnings. We agree with the court en banc, which said: ". . . the detective was quite positive in his statement as to warnings given and the responses and statements made by defendant. Therefore, the question of inconsistencies in the detective's testimony only went to the credibility of his testimony. This was carefully explained to the jury in the judge's charge as follows: 'You heard the cross-examination of Detective Hoffman. You heard Detective Hoffman state his reasons for the inconsistencies in the chronology and in the time. It is for you to determine what weight should be given to that. My recollection is he also said the defendant was

alert, pretty sharp, and that the defendant was not threatened. He said he appeared a little nervous, but not frightened. He said the defendant signed a statement. Now, I am not going into all of Detective Hoffman's testimony, but I charge you to consider it all. Consider any inconsistencies and what weight should be given to inconsistencies. Consider his manner of testifying. It is for you to determine what weight shall be given Detective Hoffman's testimony.' There would be no point to hold a new suppression hearing. Whichever version of the detective's testimony is accepted, neither would change the salient facts determined at the original suppression hearing, to wit, the nature of the warnings given and the responses and statements made by the defendant."

Appellant last argues that the trial court's charge failed to set forth the proper guidelines to be used by the jury in determining whether the two statements were voluntarily made and that it was error for the court to fail to affirm appellant's specific points for charge. We believe that the court's charge correctly covered all the requisite elements of law, including those suggested by appellant's points for charge. Apparently, appellant's counsel thought so, too, because he made no objection to the court's charge at trial. He cannot raise objection now.

Judgment of sentence affirmed.

Mr. Justice EAGEN concurs in the result.