Commonwealth *v.* Bartlett, Appellant.

Argued November 8, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Parke H. Ulrich,* with him *Fox, Differ, Mazer & Callahan,* for appellant.

*Paul W. Tressler,* Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 20, 1972:

Appellant was convicted in the Court of Common Pleas, Criminal Division, of Montgomery County, by a jury of first degree murder, robbery and conspiracy to commit robbery. Post trial motions were denied and the appellant was sentenced to life imprisonment on the murder conviction.[1] This appeal followed.

Appellant's initial argument is that the trial court erred in admitting into evidence the appellant's written statement and subsequent oral admissions, which were allegedly obtained in violation of *Miranda v. Arizona,* 384 U.S. 436.[2] The record reveals the following pertinent facts which give rise to this contention.

On January 14, 1970, the body of Milton Hawkins was found lying in a roadway in Cheltenham Township, Montgomery County. The decedent had been stabbed some forty-five times in the chest and stomach and police investigation revealed the murder weapon to be

---

[1] Appellant was sentenced to five to fifteen years on the robbery bill—sentence to run concurrently with the murder sentence—and sentence was suspended on the conspiracy bill.

[2] A pre-trial motion to suppress appellant's written statement was dismissed after an evidentiary hearing.

a hunting knife which was found in the same vicinity as the body. After establishing the victim's identity, the police questioned his family and neighbors, who informed them that the victim was last seen alive in the company of the appellant and another male. The three men had left the Hawkins residence on the night of the murder in a red Mustang.

Acting on this information, Montgomery County and Philadelphia detectives went to appellant's home in Philadelphia to question him. They were admitted to the house by the appellant who identified himself as his brother Charles Bartlett. Thus misled, the detectives questioned the appellant as to his "brother's" location. The questioning also involved the appellant's girl friend, Sharon Kitt, who was also present at that time. As the police left the house, they noticed a red Mustang parked out front and they decided to observe it from their vehicle. A short time later, appellant entered a blue Mustang and drove away. He was followed by Sharon Kitt, who drove the red Mustang. The police followed both cars, stopped Miss Kitt at the first traffic signal and asked her to produce the registration for the car. When she could not, the police informed her that she would have to accompany them to the police administration building until the registration could be verified. Meanwhile appellant, who had not been stopped, parked his car and walked over to the officers in an attempt to "straighten things out". When he could not produce identification for either the red Mustang or the car which he was driving, he, too, was taken to the police administration building. When they arrived, appellant and Miss Kitt were separately questioned about the ownership of the cars and the whereabouts of William Bartlett.

The police testified at trial that at this point they began to have some doubts as to the appellant's iden-

tity and directed their inquiry toward this question. Comparing appellant's signature with the signature of Charles Bartlett found on cards in the appellant's possession, the police found that the signatures did not match. The police brought in David Byrd, the victim's neighbor, who observed the appellant and informed the police of his true identity. Simultaneously, Sharon Kitt confirmed the fact that the appellant was masquerading as his brother. At this point the police confronted the appellant with this information and he admitted his identity. The police informed appellant that he was under arrest for the murder of Hawkins and asked him if he wished to make a statement. When he indicated his assent, he was informed of his constitutional rights and a statement was prepared, which he signed. Approximately three and one-half hours elapsed between the time appellant was brought to police headquarters and the time when he was given his constitutional warnings.

Since appellant was not given his *Miranda* warnings until after he had been in the police building for over three and one-half hours, he contends that his subsequent statement was not admissible into evidence. We do not agree. Appellant's reliance on the cases of *Com. v. Simala*, 434 Pa. 219, 252 A. 2d 575 (1969), and *Com. v. Yount*, 435 Pa. 276, 256 A. 2d 464 (1969), *cert. denied*, 397 U.S. 925 (1970), is misplaced as these cases are factually distinguishable.

In *Simala* and *Yount*, the Court held that *Miranda* warnings must be given when the person is taken into custody even if he is being questioned merely as a witness or to provide information. The facts of these two cases differ from those presently before us in one essential respect. In both *Simala* and *Yount*, the incriminating statements were made before the proper warnings were given whereas the appellant made no incrim-

inating remarks until after *Miranda* warnings were given. Here we have the appellant in custody but answering questions posed to establish his true identity. While appellant's admission of his identity focused suspicion upon himself, we fail to see how it is incriminating so as to be within the ambit of the Fifth Amendment protection against self-incrimination. Much more pertinent to the resolution of the issues at hand are the cases of *Com. v. Frazier*, 443 Pa. 178, 279 A. 2d 33 (1971), and *Com. v. Mitchell*, 445 Pa. 461, 285 A. 2d 93 (1971).

In *Frazier*, we held a confession to be admissible which was preceded by proper warnings after the defendant had been questioned for several hours.

"As we said in Commonwealth v. Moody, 429 Pa. 39, 239 A. 2d 409 (1968) : 'A confession secured after the person involved has been adequately advised of his constitutional rights is not rendered inadmissible ipso facto because an earlier confession or inculpatory admission was made in the absence of a warning of these rights, Evans v. United States, 375 F. 2d 355 (8th Cir. 1967) ; United States v. Hickey, 247 F. Supp. 621 (E. D. Pa. 1965).

"In the instant case, nothing appellant said before he was warned was used to incriminate him. No other link was shown between the questioning to which appellant was subjected without warnings and his subsequent confession, made after proper warnings had been given. Consequently, his statements were properly admissible into evidence." 443 Pa. at 181, 279 A. 2d at 35. The facts in *Frazier* are almost identical to those before us. There the defendant was being questioned about a particular incident but was not a suspect. He was a known gang member and was brought to police headquarters in an effort to determine whether the murder was related to gang warfare. While questioning the

defendant, the police became suspicious that the defendant might be involved in the crime. The interrogating detective withdrew from the interrogation room, consulted with his fellow officers, then returned to the defendant and gave him his *Miranda* warnings. Under these facts we held that the defendant's subsequent confession was admissible.

In *Mitchell,* we restated the principle that a confession made by an accused after he has been fully advised of his rights is not automatically rendered inadmissible because of prior unwarned incriminating statements. The defendant in *Mitchell* was the last known person to have been with the victim of a homicide before her death. The homicide occurred in Philadelphia and the defendant was in Aston, Pennsylvania, a small town approximately one hour's drive away. The police went to Aston without a search warrant and asked the defendant to accompany them back to Philadelphia, which he did. During the trip back the detectives asked the defendant four questions dealing with his identity and his whereabouts on the night of the crime. Upon arriving at police headquarters in Philadelphia, the defendant was advised of his rights and told that he was a suspect in the murder. He then gave a statement admitting his guilt which was used at trial. In affirming his conviction, and upholding the admissibility of his confession, we said: "And most importantly, complete warnings of his constitutional rights were given before this questioning began so that Mitchell had ample opportunity to exercise his right to remain silent to protect himself since up to this point the police had gained nothing so damaging that there was no longer a need on Mitchell's part to remain silent. Cf. Commonwealth v. Ware, 438 Pa. 517, 265 A. 2d 790 (1970)." 445 Pa. at 446, 285 A. 2d at 96.

Reviewing the facts of this case in light of our holdings in *Mitchell* and *Frazier,* we find no merit in appellant's contention. During the three hours that the appellant was in custody he made no statements which linked him to the murder being investigated. In fact, the police, thinking appellant to be his brother, directed their questions toward determining the suspect's whereabouts. Even when the police began to suspect that appellant was lying about his identity, their questions were directed solely to establishing that identity. No questions which tended to incriminate the appellant or in any way establish his connection with the murder were asked until appellant's identity had been positively established and the proper *Miranda* warnings given. The defendant was given proper warnings before he made any statements damaging to himself and thus had ample opportunity to remain silent and request the presence of counsel had he chosen to do so. Furthermore, nothing which was said prior to the proper warnings was admitted into evidence at the trial. Viewing the appellant's confession in light of the totality of the circumstances, we hold that the confession was free of taint, and that it was properly admitted into evidence at trial.

Appellant next contends that the trial judge erred in several aspects of his charge to the jury. At the conclusion of his charge, the trial judge gave counsel the opportunity to suggest changes in the charge and to take exception and appellant's counsel presented the same allegations of error to the trial judge that he now asserts. The trial judge then read additional charges to the jury based on counsel's suggestions. Viewing the charge as a whole, it is obvious that the trial judge's additional charge cured any error, if, in fact, any error existed, and that the charge as a whole fairly and accurately stated the law.

Appellant also argues that the trial judge erred in admitting certain items of the victim's clothing into evidence. The law is well settled[3] that the admission of evidence which may tend to inflame the minds of the jury is admissible at the trial court's discretion, and an appellate court will reverse only upon a showing of abuse of discretion. We find no such abuse here. The evidence was introduced to show the number and force of the blows with the intention of showing that more than one person stabbed the victim. It was the function of the trial judge to balance the possible harmful effect of the bloody clothing against its probative value and we will not usurp that function. Moreover, no exception or objection was taken. The record reveals that appellant's counsel had an opportunity to object to the inclusion of these items on three separate occasions but remained silent. In fact, before admitting the victim's clothing into evidence the trial judge specifically asked if there were any objections and appellant's counsel responded that there were none. We cannot accept appellant's argument that the admission of these articles of clothing was so prejudicial as to preclude a fair trial.

Appellant lastly contends that the verdict was against the weight of the evidence. Viewing the evidence and all reasonable inferences which can be derived therefrom in the light most favorable to the Commonwealth as the verdict winner, we find that there was ample evidence on the record to support the jury's verdict. There is no merit to appellant's argument that the Commonwealth failed to establish the corpus delicti of the robbery before introducing the appellant's confession. The Commonwealth introduced the testimony

---

[3] *See, Com. v. Powell*, 428 Pa. 275, 241 A. 2d 119 (1968) (photographs of victim) ; *Com. v. Novak*, 395 Pa. 199, 211, 150 A. 2d 102, 108 (1959) (bloody clothing and photographs of victim).

of a witness who saw the victim enter the appellant's car on the night of the murder and who heard the victim tell the appellant that he had a large sum of money in his possession. Evidence was also introduced to show that the victim's pocket was ripped and that his wallet was missing when his body was found. The law is clear that a person may be convicted on the basis of circumstantial evidence alone so long as the reasonable inferences arising from such evidence proves the fact in question beyond a reasonable doubt. *E.g., Com. v. Thomas*, 429 Pa. 227, 239 A. 2d 354 (1968). The circumstantial evidence is sufficient to establish the corpus delicti in this case.

Judgment of sentence affirmed.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.