336 A.2d 603

**COMMONWEALTH of Pennsylvania**

**v.**

**Tony WHITAKER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1974.

Decided March 18, 1975.

408

Allan M. Tabas, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., John H. Isom, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

After a trial by jury, Tony Whitaker, the appellant, was found guilty of murder in the second degree in connection with the fatal stabbing of one Benjamin Simmons. Post-trial motions were denied, and appellant was sentenced to imprisonment of not less than seven nor more than twenty years. This appeal centers on the admissiblity of two statements which appellant had made to the police and which constituted, substantially, the only evidence presented by the Commonwealth at trial. We conclude that, because of the illegality of appellant's original arrest, the admission of the statements was constitutional error, and therefore reverse.

On August 31, 1972, Simmons was found stabbed to death on South 59th Street in Philadelphia. After several months of fruitless investigation the police learned through questioning members of various street gangs that "Pops" Barton and a person named Tony, two members of the Master Street Moon Gang, had been "involved" in the incident. At approximately noon on November 22, 1972, Tony Whitaker, then seventeen years

old, was taken into custody by a Detective Ross and another detective and transported to the Police Administration Building for questioning. There he was given *Miranda* warnings and he signed a written waiver of his constitutional rights. In the course of the ensuing interview, appellant gave an oral statement in which he admitted that on August 31st he had accompanied John "Pops" Barton, whom he knew to be armed with a butcher knife, to the "turf" of a rival gang on South 59th Street. There Whitaker and Barton walked on separate sides of the street. Appellant heard Barton yell "58th Street" (an apparent reference to a member of the 58th Street gang), and turned to see Barton stabbing a man. Whitaker denied having participated in the assault and stated that he had immediately run from the scene. At 10:00 p. m. Whitaker's mother arrived at the station and in her presence the substance of the oral statement was reduced to writing. After signing this statement, appellant was released from custody.

Two days later, on November 24, 1972, acting upon the information provided by Whitaker, the police arrested Barton. Barton made a full confession in which he stated that Whitaker had participated in the attack by beating the victim, Benjamin Simmons, with his fists. Possessed of this additional information, the police went to appellant's home on November 27, 1972 and, with Whitaker's consent, took him to the Police Administration Building for further questioning. There Detective Grose informed Whitaker that Barton had been arrested and had given a statement accusing appellant of striking Simmons several times before Barton had used the knife. Whitaker was then again advised of his constitutional rights and again waived them in writing. He quickly then admitted, first orally and later in writing, that the events had occurred as Barton had described. After signing the written statement, appellant was formally placed under arrest.

A motion was made to suppress Whitaker's two oral and two written statements. At the suppression hearing Detective Ross testified that at the time Whitaker was first apprehended on November 22 the police had no information that he had committed a crime; they had merely "picked up" Whitaker for questioning. The suppression judge found that the detention of appellant on November 22 constituted an arrest, and that the arrest was unlawful as without probable cause. He further held that the two statements made on that day were gained through exploitation of the illegal arrest and were, therefore inadmissible as "fruit of the poisonous tree." A contrary result was reached, however, as to the two statements made on the 27th. The court reasoned that although the taking of Whitaker into custody on that day amounted to an arrest, probable cause for it was supplied by the confession of Barton, and the later statements were, therefore, untainted. It is this latter determination which appellant challenges today.

We note, preliminarily, that the Commonwealth, having prevailed as to the admissibility of the statements made on November 27, had no occasion to challenge the findings of the suppression judge with respect to Whitaker's arrest and statements of November 22. Without belaboring the point, we think the record amply sustains these determinations. The Commonwealth does not dispute that the detention to which Whitaker was subjected on that day—twelve hours of intermittent interrogation—constituted an arrest. See *Commonwealth v. Bishop*, 425 Pa. 175, 181, 228 A.2d 661, 665 (1967). Neither does it argue that the arrest was valid. The police had no information about Tony Whitaker; they had merely learned, months previously, that a person known as "Tony" had been "involved" in the episode in which Simmons was killed. This may be thought to cast suspicion upon anyone in the vicinity going by that name, but mere suspicion is insufficient to support any arrest, with or

without a warrant. See *Henry v. United States*, 361 U. S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, 137 (1959); *Conner v. Commonwealth*, 3 Bin. 38, Pa. (1810). The suppression court was also correct in concluding that the statements which appellant gave during the interrogation of November 22 stemmed directly and immediately from the illegal arrest and were impermissibly tainted by it. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1965); *Commonwealth v. Daniels*, 455 Pa. 552, 558, 317 A.2d 237, 240 (1974); *Betrand Appeal*, 451 Pa. 381, 389–91, 303 A.2d 486, 491 (1973).[1] See and compare *Commonwealth v. Mitchell*, 445 Pa. 461, 466, 285 A.2d 93, 96 (1971); *Commonwealth v. Marabel*, 445 Pa. 435, 449, 283 A.2d 285, 292 (1971); *Commonwealth v. Bishop, supra; Commonwealth ex rel. Craig v. Maroney*, 348 F.2d 22, 29 (3rd Cir. 1965), cert. denied 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); *Leonard v. United States*, 391 F.2d 537 (9th Cir. 1968).

Accepting, therefore, as we do the premise that the statements given by appellant on the 22nd were fruits of an unlawful arrest made on that day, we proceed to consider his claim that the statements of the 27th were also tainted by that same unconstitutional arrest.

█ In its well-known decision in *Wong Sun v. United States, supra,* the Supreme Court of the United States restated the principle that the exclusionary rule which prohibits the use of evidence obtained from an accused in violation of the Fourth or Fifth Amendments prohibits also the indirect use of such evidence. On the question as to what evidence must be considered as obtained as a direct result of an unlawful invasion, and so excluded, the Court said, in a frequently quoted passage: "We need not hold that all evidence is 'fruit of the poisonous

1. The writer of this opinion, speaking only for himself, would hold that the statements of November 22 must be excluded on the rationale set forth in the concurring opinion in *Betrand Appeal,* 451 Pa. 381, 392, 303 A.2d 486, 492 (1973) (concurring opinion of Pomeroy, J.).

tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun, supra,* 371 U.S. at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455, quoting Maguire, Evidence of Guilt (1959). See also *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33.

■ Whether challenged evidence has been sufficiently purged of an impermissible taint, here the clearly unlawful arrest, to render it admissible must be determined from the totality of the circumstances surrounding each particular case, *Commonwealth v. Marabel, supra; Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968); the burden of proof rests with the Commonwealth. *Betrand Appeal, supra,* 451 Pa. at 389, 303 A.2d at 490; *Commonwealth v. Bishop, supra.* See also *Harrison v. United States,* 392 U.S. 219, 225, 88 S.Ct. 2008, 2011, 20 L.Ed.2d 1047, 1053 (1968).

■ In virtually all of the "fruit of the poisonous tree" cases which this Court has considered, there have existed only two links in the alleged causal chain, i. e., the initial illegality and the challenged physical or verbal evidence resulting therefrom. In the present case the progression is more complex, but the fact that there are several links and a five-day time span in this chain of events is not significant; what is of critical importance for constitutional purposes is that there exists a real and direct causal connection between appellant's unlawful arrest on November 22 and his ultimate confession on November 27. As the Commonwealth acknowledges in its brief, "[a]s a result of appellant's initial statements on November 22, 1972, the police arrested John Barton, and on November 24, 1972, he [Barton] confessed to the

414

murder and implicated Tony Whitaker, appellant, as a participant in the crime. . . . *As a result of* this information, appellant was arrested and on November 27, 1972 confessed his participation in the crime." (Commonwealth's brief, p. 6; emphasis added). Again it is said, "[o]n the strength of this evidence [i. e. Barton's statement that Whitaker had taken part in the murder], appellant was arrested anew on November 27th, and *after being confronted with Barton's accusation,* confessed his participation in the stabbing." (Commonwealth's brief, p. 8; emphasis added).

The Commonwealth contends that our decision in *Commonwealth v. Garvin, supra,* indicates a contrary result. It is argued that because the police knew the identity of Barton before appellant's unlawful arrest, it cannot be assumed that, absent appellant's incrimination of Barton, the latter would never have been arrested and so never would have made his confession implicating Whitaker. We cannot agree. In *Garvin,* the defendant was illegally arrested for robbery and taken to the scene of the robbery, where he was identified by one of the victims. The proof revealed that the victim had had an opportunity to observe her assailant for as long as five minutes under good lighting conditions. There was thus clearly a basis for the identification wholly independent of the unconstitutional arrest. We held that the identification evidence was not the product of the unlawful arrest because the arrest had "contributed neither to the knowledge of the witnesses nor to the accuracy of their identification." *Commonwealth v. Garvin,* 448 Pa. at 266, 293 A.2d at 38. It was in that context, then, that we said that "the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome. . . . We cannot assume that but for the illegal arrest the appellant would have remained at large indefinitely." *id.*

In the case at bar, as noted above, the Commonwealth concedes that the illegal arrest of appellant did contrib-

ute substantially to the arrest of Barton. It is worth repeating that in the almost three months prior to appellant's arrest and statements on November 22, the police had learned nothing concerning the Simmons murder with the exception of a vague reference to two names; they had no evidence which would link Barton to the crime. It is possible, of course, that sooner or later the police might have amassed sufficient information from a source independent of the appellant upon which to arrest Barton, but the fact remains that, as far as the record shows, the investigation had not focused on Barton, nor was independent evidence implicating Barton available or likely to be so. See *Commonwealth v. Cephas*, 447 Pa. 500, 508, 291 A.2d 106, 109 (1972).

The police released Whitaker from custody on November 22 because his initial statement, while inculpatory to a degree, did not provide information sufficient to justify charging him with any involvement in the death of Benjamin Simmons. It is obvious, therefore, that it was the Barton confession which provided both the basis for Whitaker's second arrest and the impetus for his full confession. This concatenation of events completes the causal chain. The situation is the same, causally, as if Whitaker, in his first statement, had fatally implicated himself as well as Barton, rather than Barton alone.

*Other cases in which this Court has* found a dissipation of the taint of illegality are likewise clearly distinguishable from the case at bar. In *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972) and *Commonwealth v. Marabel, supra*, the defendant in each case was illegally arrested and then confronted with the accusations of a third party (in *Fogan*, that of a co-felon, in *Marabel*, that of an eyewitness) which induced him to confess his guilt. In each instance, however, and in contra-distinction to the instant case, the police obtained the accuser's statement from sources wholly independent of the defendant. Specifically, in *Fogan*, the defendant had

given to the police no information which served either a basis for arresting the co-felon or as an inducement to the co-felon to incriminate the defendant.[2] See also *Commonwealth v. Wright,* 460 Pa. 247, 332 A.2d 809 [filed January 27, 1975] and compare *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 [filed January 27, 1975].

■ The Commonwealth argues, finally, that appellant's written waiver of his constitutional rights prior to his confession on November 27 constituted a voluntary act which served to break the chain of causality. In *Commonwealth v. Bishop, supra,* we iterated the recognition in *Wong Sun* that the causal connection between an unlawful arrest and a challenged confession is broken not only by a sufficient attenuation (heretofore considered) but also by a showing that the confession was "sufficiently an act of the free will" of the accused. 425 Pa. at 182–83, 228 A.2d at 666, citing *Wong Sun, supra.* We went on to explain that by "sufficiently an act of the free will" we meant "not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest. . . . That is to say, *the confession must first meet whatever admissibility test is then required of a normal confession.*" 425 Pa. at 183, 228 A.2d at 666.[3] In accordance with this approach, we

2. In both *Fogan* and *Marabel,* therefore, it could be said: "the genesis of the confession was not the use of any illegally obtained statements from the appellant's own lips, rather it was information obtained from a totally separate, independent, and legitimate source. The evidence, therefore, . . . was not the product of exploitation of the original illegality, but rather, the result of confronting appellant with evidence totally devoid of any illegality." *Commonwealth v. Marabel,* 445 Pa. at 448, 283 A.2d at 291.

3. The admissibility of the confession in *Bishop* was governed by the pre-*Escobedo* "voluntariness" test. See *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Today, of course, it is the decision of the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) which controls this issue.

have declined to hold that the giving of *Miranda* warnings followed by an accused's waiver of his Fifth Amendment rights constitutes, *per se,* a dissipation of the taint of illegality. *Commonwealth v. Richards, supra; Commonwealth v. Daniels, supra; Betrand Appeal, supra.* This refusal is bottomed not only upon the deterrent purpose of the exclusionary rule but also upon the belief that the safeguards which *Miranda* provides an accused who has been *lawfully* detained may not afford adequate protection to an accused who has been subjected to an *unlawful* arrest. " '[I]f a mere showing that a confession during a period of unlawful detention was "voluntary" were sufficient to establish its admissibility, *Wong Sun* would be an empty promise, for the inadmissibility of "involuntary" confessions has long been fully recognized.' . . . . Surely the *Miranda* warning, intended to deter exploitive police practices, cannot now be perverted to thwart the equally important deterrent purpose behind the exclusionary rule of *Wong Sun.*" *Betrand Appeal, supra,* 451 Pa. at 391–92, 303 A.2d at 491, quoting *Collins v. Beto,* 348 F.2d 823, 829 (5th Cir. 1965).

■ Various factors have been considered by this Court in determining whether a challenged confession, although made after a waiver of constitutional rights, has been obtained through exploitation of prior constitutional violations. Among them are whether the police induced the confession by a manipulation of the prior illegality, *Commonwealth v. Kenny,* 449 Pa. 562, 297 A.2d 794 (1972); *Commonwealth v. Ware,* 438 Pa. 517, 265 A.2d 790 (1970); and whether the accused previously made illegally obtained inculpatory admissions which created a psychological pressure upon him to confess. *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Frazier,* 443 Pa. 178, 279 A.2d 33 (1971). We think these two factors were present in the case at bar.

By revealing to Detective Ross on November 22 that he had been with Barton at the time of the stabbing, Whitaker had made a partially inculpatory admission. This statement, while it did not amount to a confession of guilt, nevertheless exposed to the police enough damaging information to increase Whitaker's vulnerability during subsequent questioning by the same interrogator. See *Commonwealth v. Bartlett, supra,* 446 Pa. at 398–99, 288 A.2d 796; *Commonwealth v. Frazier, supra,* 443 Pa. at 188, 279 A.2d 33; *Commonwealth v. Mitchell, supra,* 445 Pa. at 466, 285 A.2d at 96. It was against this background that Detective Grose *first* told appellant that Barton had made a full confession which directly implicated him and *then* asked appellant if he wanted to confess, and warned him anew of his rights. In view of the psychological pressure implicit in this situation, it is not surprising that appellant signed a waiver of his rights and confessed. This sort of use of unconstitutionally-obtained evidence in order to induce a confession is the very kind of "exploitation" that is condemned. See *Commonwealth v. Marabel, supra,* 445 Pa. at 447–48, 283 A. 2d at 291.

Under these circumstances, we are unable to find that the giving of *Miranda* warnings and the waiver of rights which followed constituted the kind of uncoerced waiver which it is the Commonwealth's burden to establish. The resulting evidence—the two confessions of November 27—"was come at by the exploitation of [the illegal arrest]", *Wong Sun, supra,* 371 U.S. at 488, 83 S.Ct. at 417 and its admission into evidence was error.

Judgment of sentence reversed and case remanded for a new trial.

JONES, C. J., filed a dissenting opinion in which EAGEN and O'BRIEN, JJ., join.

JONES, Chief Justice (dissenting).

I dissent. The majority opinion views appellant's statements of November 27, 1972 as the product of his illegal arrest on November 22 and implies an acceptance of the "but for" test specifically rejected by the United States Supreme Court in *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and by this Court in *Commonwealth v. Bishop,* 425 Pa. 175, 182 n. 5, 228 A.2d 661, 665 n. 5 (1967).

The majority essentially argues that "but for" the illegal arrest of Tony Whitaker on November 22, the police would not have uncovered John Barton, who then would not have implicated Whitaker, who then would not have confessed after his re-arrest. However, Barton's arrest was concededly legal. Once Barton was properly in custody any evidence flowing from his arrest was related to *that arrest* and not to the illegal seizure of Whitaker. More particularly, Barton's decision to confess and implicate Whitaker itself provides a sufficient intervening circumstance to dissipate any taint of the illegality which occurred November 22.

In *Commonwealth v. Wright,* 460 Pa. 247, 332 A.2d 809 [J–554 filed January 27, 1975], Mr. Justice Pomeroy, again speaking for the majority, held that a confession following an illegal arrest was admissible even though prompted by the confrontation with another illegally-arrested suspect. The confession was ruled to be a product of the confrontation with the other suspect. If the confession at issue in *Commonwealth v. Wright* was sufficiently purged of any initial illegality, surely one that flows from a legal arrest must also be admissible evidence.

I maintain that Whitaker's rearrest and subsequent statements were the products of Barton's legal arrest and competent confession and, therefore, sufficiently attenuated from the initial illegality. *Wong Sun v. United States,* 371 U.S. at 487, 83 S.Ct. 407, quoting *Nardone v.*

420

*United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

I would affirm.

EAGEN and O'BRIEN, JJ., join in his dissent.