385 A.2d 1334

**COMMONWEALTH of Pennsylvania**

v.

**Julius WIDEMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided April 28, 1978.

---

Lee Mandell, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Robert Fogelnest, Asst. Dist. Atty., Glen Gitomer, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Julius Wideman, was convicted by a jury of murder of the second degree. Post-verdict motions were denied and sentence imposed and this direct appeal followed.

The facts are as follows. James Allen was beaten and shot on February 28, 1971 at 1:15 a. m.; he was pronounced dead on arrival at St. Joseph's Hospital, Philadelphia. Among the victim's personal effects was a Pennsylvania automobile owner's registration card in the name of appellant. Wideman was contacted by police and voluntarily went to police headquarters, with his wife, at approximately 5:00 a. m. on February 28. The police found blood on appellant's dark colored Buick Electra 225, a car similar to the one driven by the victim's assailant. Appellant was warned of his constitutional rights and subsequently gave an oral and a written confession.

Appellant was initially tried in July, 1971, for the above homicide and both confessions were introduced into evidence at that trial. On appeal, this court reversed the judgment of sentence and granted appellant a new trial on the basis of

the failure of the police to adequately warn appellant of his *Miranda* rights prior to his oral statement. This court further suppressed appellant's subsequent written confession as being the fruit of the poisonous tree. *Commonwealth v. Wideman,* 460 Pa. 699, 334 A.2d 594 (1975). This appeal arises from the judgment of sentence imposed at the retrial.

Appellant argues that the trial court erred in admitting into evidence a gun which allegedly had been used in the slaying. Police found the gun in a sewer at the corner of Bouvier and Berks Streets in Philadelphia after appellant gave police this information in his confessions, which this court later ruled inadmissible. Appellant now argues that the gun was the fruit of the illegal confession, and, therefore, is inadmissible. We agree with appellant and reverse the judgment of sentence.[1]

This court, in *Commonwealth v. Whitaker,* 461 Pa. 407, 412-13, 336 A.2d 603, 606 (1975), in discussing the fruit of the poisonous tree argument, stated:

1. Because of our disposition of this issue, we need not reach appellant's other allegations of error which are:

   "1. The Lower Court erred by allowing the Commonwealth to introduce the prior recorded testimony of a witness since deceased.

   "2. The statements made by Appellant to the police approximately 1½ hours after the initial submission to custody, were the product of an unnecessary delay between arrest and arraignment.

   "3. The Lower Court erred in its charge to the jury regarding malice.

   "4. The prosecutor made certain prejudicial improper remarks in his closing statement to the jury.

   "5. The Lower Court erred in its charge to the jury regarding the definition of reasonable doubt.

   "6. The Court erred in its comments in its charge that voluntary manslaughter was not involved in this case.

   "7. The Court erred in its charge concerning identification testimony.

   "8. The Court erred in allowing the prosecution to question a defense witness about his prior arrests, despite the fact that his prior conduct was not in issue.

   "9. The Court erred in allowing testimony from various Commonwealth witnesses regarding a search of the Appellant's premises and the resultant discovery of various items of personalty, later testified to, introduced and admitted into evidence at trial."

"In its well-known decision in *Wong Sun v. United States,* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1965)], the Supreme Court of the United States restated the principle that the exclusionary rule which prohibits the use of evidence obtained from an accused in violation of the Fourth or Fifth Amendments prohibits also the indirect use of such evidence. On the question as to what evidence must be considered as obtained as a direct result of an unlawful invasion, and so excluded, the Court said, in a frequently quoted passage: 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' *Wong Sun, supra,* . . . at 487 -88, 83 S.Ct. 407. . . . quoting Maguire, Evidence of Guilt (1959). See also *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33.

"Whether challenged evidence has been sufficiently purged of an impermissible taint, here the clearly unlawful arrest, to render it admissible must be determined from the totality of the circumstances surrounding each particular case . . .. (Citations omitted.)

"In virtually all of the 'fruit of the poisonous tree' cases which this Court has considered, there have existed only two links in the alleged causal chain, i. e., the initial illegality and the challenged physical or verbal evidence resulting therefrom. . . ."

In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), we held that evidence which would inevitably have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. The burden of proving such inevitable discovery rests with the prosecution. *Commonwealth v. Whitaker, supra.* In the instant case, the suppression court found that the gun in question inevitably

would have been discovered. In reviewing this finding, we must consider only the Commonwealth's evidence and the uncontradicted evidence of appellant,[2] and determine if the court's finding is supported by the evidence. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976). Using this standard of review, we are unable to find sufficient evidence to support the suppression court's findings of fact and conclusions of law.

At the suppression hearing, Detective John Basmajian, a homicide detective, testified that in all homicides, the police would first search for a murder weapon at a defendant's residence. If the weapon was not found, police would attempt to retrace a defendant's steps by taking the most direct route between the scene of the crime and the defendant's residence, searching sewers, vacant lots and empty houses along the way. The Commonwealth argues that the evidence showed that the gun in question would have been found in such a manner, thus dissipating the taint of the illegal confession. We do not agree.

The shooting occurred in the 1500 block of North Gratz Street. Witnesses told police that the perpetrators got in their car and drove south on Gratz Street and turned east on Jefferson. When given these facts, Detective Basmajian was asked which route the police originally would have searched using the standard procedure. Detective Basmajian testified that since appellant's residence was at 2762 N. Ringgold Street he would have traveled east on Jefferson to 18th Street, turning north until he intersected with whatever street runs east and west near the 2700 block of North Ringgold. When asked how far he would have deviated from this route, Detective Basmajian testified:

> "That would have depended upon what information I would have gleaned as a result of still searching for the weapon. As it came about I didn't have to go any farther, I learned where it was, so I didn't pursue that line of the investigation. *I don't know how much farther I would have went either way.*" (Emphasis added.)

2. Appellant offered no evidence at the hearing on this issue.

While Bouvier and Berks Streets (where the weapon was recovered) are in the vicinity of the shooting, there is no testimony from the investigating detective indicating the sewer at Bouvier and Berks inevitably would have been searched. As such, the finding of the suppression court is not supported by the record.

In ruling that the weapon inevitably would have been discovered, the court stated:

". . . I tried many of the gang killing cases, and in a few of the gang killing cases the shotguns that were used were found in sewers, maybe a half mile away, as a result of what we call a search from the shooting and a half mile around, all around, and they find the gun in the sewer. In gang killings guns are either thrown up on roofs or inlets, those two places, and I think this plan that this detective testified to would have been a reasonable one, to say let's take Gratz Street and take an area of five or six blocks all the way around, that would be reasonable. *If I was a detective that is what I would do.* A suspect does not necessarily run a direct route home. Sometimes they deviate." (Emphasis added.)

What the suppression court learned from past experience is simply not relevant; [3] neither is what the suppression judge would have done had he been the detective in charge. The court's consideration must be limited to the evidence before it. Here, the record simply does not support the finding that the gun inevitably would have been discovered. Since the taint of the illegal confession has not been dissipated, the gun was improperly admitted into evidence.

Judgment of sentence reversed and the case is remanded for a new trial.

PACKEL, J., took no part in the decision of this case.

MANDERINO, J., files a concurring opinion.

ROBERTS, J., concurs in the result.

**3.** This is especially true where the procedure alluded to by the court is completely different from that given by Detective Basmajian.

MANDERINO, Justice, concurring.

I join in the mandate of the Court because this case is controlled by *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), wherein fingerprints obtained after an illegal arrest were ordered suppressed regardless of whether the prints might have been obtained through other sources.