170 N.J. Super. 499 (1979)
406 A.2d 1340
STATE OF NEW JERSEY, PLAINTIFF,
v.
HERBERT COOK AND BENJAMIN JACKSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 25, 1979.
*500 Mr. William A. Fox, Assistant Prosecutor, for the State of New Jersey (Mr. Donald S. Coburn, Essex County Prosecutor, attorney).
Mr. Joseph P. Brennan, Jr. for defendant Herbert Cook.
Mr. Thomas R. Ashley for defendant Benjamin Jackson (Messrs. Ashley & Charles, attorneys).
JOSEPH F. WALSH, J.S.C.
This is a motion to suppress currency and gambling slips, allegedly taken from defendant Jackson after he made certain responses to a police officer who had not as yet given the Miranda warnings. The seizure was based on these responses.
Presently there are two issues before the court. First, was defendant's inculpatory statement obtained in violation of his fifth amendment protection against self-incrimination? And if so, is the physical evidence discovered as a result of the statement tainted and also excluded from evidence?
*501 The facts are as follows:
Newark police officers spotted a 1970 Buick. The officers' suspicions were initially triggered by the automobile's irregular stopping movement as it approached a parked school bus. The automobile then proceeded down the street, applying the brakes frequently, and stopping in the middle of the street for no apparent reason. The officers stopped the car. The driver, defendant Cook, was ordered out of the car. He had neither a license nor registration. He was frisked and placed in custody on suspicion of being in possession of a stolen vehicle.
The passenger was then searched for weapons. The officer noted several large bulges which he candidly stated were soft and led him to believe they were not weapons or anything he had to fear. He stated he could see money. He also testified at that point that defendant was not free to leave the area if he desired. Pointing to the money, the officer asked "What's this?" Defendant replied "Money." Again the officer asked the question, "Money?" and defendant in substance replied that he didn't want to waste time and that he was a numbers runner and indicated he wanted to make a deal. Thereupon the officer seized the evidence consisting of $1,132.90 in cash and lottery bets and slips totaling $6,403.30.
In light of the recent Supreme Court decision of Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the officers had probable cause to pull over the vehicle. The court's holding specifically excepted situations where the police have at least an "articulable and reasonable suspicion" of a traffic or safety violation.
The present set of facts clearly give rise to an articulable suspicion. The miscalculated avoidance of the parked school bus and the frequent unnecessary stopping provided the officers with "reasonable suspicion" of the commission of a traffic violation.
Likewise, the inability to produce a license and registration gave the investigating officers reasonable grounds to believe *502 that the automobile was stolen. Thus, it is clear that the police were justified in conducting a pat down search for their own protection. Recently, the highest court of this State reaffirmed the principle that reasonable grounds for a protective search requires a substantially lesser degree of certainty than does probable cause to arrest. State in the Interest of H.B., 75 N.J. 243, 251 (1977).
The court in H.B. did point out that a protective frisk comprehends only weapons (lethal material) and not narcotics or gambling paraphernalia. Id. at 251-252.
Once the questioning was completed the officer had sufficient probable cause to arrest defendant Jackson. Absent any other constitutional problems, the seizure would be permissible.
In this case, however, other constitutional problems are present. Specifically, the court is troubled by the questioning of defendant Jackson before he was given his Miranda warnings. The now familiar rule of Miranda was paraphrased early on by the Supreme Court of New Jersey:
The exclusionary rule of Miranda bars from evidence statements of a defendant made during in-custody interrogation unless he has been advised of his right to remain silent and of his right to have counsel present, to be furnished if there is financial inability to hire, and has knowingly and intelligently waived such rights. [State v. Gosser, 50 N.J. 438, 445-446 (1967), cert. den., 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968)].
Numerous cases subsequent to Miranda have centered on the words "custody" and "interrogation."
As to the custody requirement there is no doubt. Officer Ashten testified on cross-examination that defendant Jackson was not permitted to leave. Additionally, the driver of the car, defendant Cook, was already arrested and placed in the back seat of the patrol car.
Any statement made after a question and before Miranda rights are read must be barred. It is clear that the officer asked two questions of Jackson, the second of which was not a traditional question but rather a demand for an explanation. This, *503 too, qualifies as an interrogation question in light of the expansive interpretation set forth in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
Since the statements of defendant were responses to in-custody interrogation before he was given his Miranda warnings, the statements must be suppressed.
Having found that the inculpatory statement of defendant Jackson is not admissible as substantive evidence, it becomes necessary to determine the effect of the statement on the discovery and seizure of the lottery slips. Are they tainted? Finding no New Jersey case directly on point, it is necessary to examine the case law from other jurisdictions.
In Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the United States Supreme Court analyzed the application of the Wong Sun[1] fruits of the poisonous tree doctrine to the exclusionary effect of Miranda. Tucker had been arrested by the Pontiac police in connection with a rape. He was not advised that an attorney would be appointed if he could not afford one. In response to subsequent questioning Tucker stated that during the time in question he was with one Robert Henderson. Henderson's story discredited the defendant's and was very damaging. At trial Tucker's statements were excluded because he did not receive full Miranda warnings. The trial court, however, did allow Henderson to testify. Id. at 436-438, 94 S.Ct. 2357.
The Supreme Court first distinguished between infringement upon the right against self-incrimination and a violation of prophylactic rules developed to protect that right and found that the Miranda rules are "not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." Id. at *504 444, 94 S.Ct. at 2364. With this initial determination of Miranda rights behind it, the court concluded that Wong Sun was not applicable:
This Court has also said, in Wong Sun v. United States, * * *, that the "fruits" of police conduct which actually infringed a defendant's Fourth Amendment rights must be suppressed. But we have already concluded that the police conduct at issue here did not abridge respondent's constitutional privilege against compulsory self-incrimination, but departed only from the prophylactic standards later laid down by this Court in Miranda to safeguard that privilege. Thus, in deciding whether Henderson's testimony must be excluded, there is no controlling precedent of this Court to guide us. [at 445-446, 94 S.Ct. at 2364, 2365; citations and footnotes omitted].
The court then stated:
Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever. The pressures of law enforcement and the vagaries of human nature would make such an expectation unrealistic. Before we penalize police error, therefore, we must consider whether the sanction serves a valid and useful purpose.
We have recently said, in a search-and-seizure context, that the exclusionary rule's "prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, [619], 38 L.Ed.2d 561 (1974). We then continued:
"`The rule is calculated to prevent, not to repair. Its purpose is to deter  to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it.' Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)." [at 446, 94 S.Ct. at 2365]
This court finds no action on the part of the officers in this case that even borders on improper practice or coercion or any attempt to violate the defendants' rights. The only violation this court finds is the failure to recite the Miranda warnings prior to the statements. The Supreme Court has stated that only in this situation should the exclusionary rule prevail.
At least one court has interpreted Tucker as "holding that inculpatory evidence [a witness] gained by interrogation without *505 Miranda warnings did not compel exclusion" under Wong Sun. Fried v. State, 42 Md. App. 643, 402 A.2d 101, 103 (Spec.App. 1979).
Two other very recent decisions have touched the same issue and reached different conclusions.
In State v. Innis, R.I., 391 A.2d 1158 (Sup.Ct. 1978), cert. granted, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979), the Supreme Court of Rhode Island suppressed a shotgun which was introduced by the state in a murder trial. The incriminating statements in that case were made under circumstances closely paralleling those of Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In Innis the court relied on the Miranda violation and then applied the "fruits of the poisonous tree" doctrine to exclude the discovered shotgun.
The Innis opinion has little precedential value because of the confusion it creates. The majority seemingly could have ruled the shotgun inadmissible as violative of the defendant's Sixth Amendment right to counsel. As the dissent correctly points out, the Supreme Court in Brewer v. Williams explicitly chose to decide the case under the Sixth Amendment and not the Fifth Amendment. State v. Innis, 391 A.2d at 1169, n. 2 (Kelleher, J. dissenting). Additionally, neither the majority nor the dissenters made mention of Michigan v. Tucker.
A second recent decision, Commonwealth v. Wideman, 478 Pa. 102, 385 A.2d 1334 (Sup.Ct. 1978), also held that Wong Sun is applicable to tangible evidence obtained in violation of Miranda. While the Supreme Court of Pennsylvania ultimately decided the case by finding insufficient evidence of the inevitable discovery of the murder weapon, the court held that the murder weapon which was found in a sewer must be suppressed as tainted by an illegal confession. There the gun was the result of a written confession which was the result of an oral statement. It was the original oral statement which was violative of Miranda, and the court chose to also exclude the confession and *506 the weapon. Again there was no mention of the holding in Michigan v. Tucker.
It should be noted further that neither Innis nor Wideman relied on their respective state constitutional provisions. Both were decided as matters of federal constitutional law. Additionally, neither court gave any indication that they were attempting to confer greater civil liberties than those granted by the United States Supreme Court.
Finding the Supreme Court's opinion in Michigan v. Tucker both controlling and persuasive, this court finds that the lottery slips and other gambling paraphernalia should not be suppressed as a fruit of the poisonous tree. The discovery of the slips after the admission by defendant Jackson does not violate the Fifth Amendment guarantee against compulsory self-incrimination. A violation of the prophylactic rules announced in Miranda does not automatically require suppression of evidence seized as a result. In the case at bar there is no indication of bad faith on the part of the investigating officers. In the absence of such, this court is not inclined to exclude the tangible evidence seized from the defendant.
NOTES
[1] Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).