414 A.2d 379

**COMMONWEALTH of Pennsylvania**

v.

**Willis JONES, Appellant.**

Superior Court of Pennsylvania.

Argued July 9, 1979.

Filed Nov. 16, 1979.

530

Carol E. Haltrecht, Assistant Public Defender, West Chester, for appellant.

John E. White, Jr., Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

* Justice ROBERT N. C. NIX, Jr., of the Supreme Court of Pennsylvania, and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

WIEAND, Judge:

Willis Jones was convicted of third degree murder in connection with the shooting death of Woodrow Bare, Sr. Post trial motions were dismissed, and Jones was sentenced to prison for not less than three nor more than seven years. He appeals from the judgment of sentence. We reverse and remand for a new trial.

Woodrow Bare, Sr., was shot at or about 1:30 o'clock, A.M. on August 21, 1976. By 2:10 o'clock, A.M., on the same morning, appellant and several others were in custody. Appellant had been drinking earlier that night and had accosted the decedent's son and brother. When decedent heard about the altercation, he pursued appellant's pick-up truck, which had other persons in it, but gave up the chase when appellant was able to outdistance decedent's van. During this chase, Walter Bare, decedent's brother, had been in a vehicle behind the van. Thereafter, appellant stopped at a bar, after which he drove to decedent's home. He there observed the decedent, in his van, coming toward his pick-up truck. He shot decedent with the rifle which he kept in the truck. A collision then occurred between decedent's van and appellant's truck. Appellant left the area of the shooting and hid the rifle in a cornfield. When he later returned to the scene of the shooting, he was accused of being the perpetrator by Walter Bare. Bare had previously told police of the shooting and had given them the license number of appellant's truck. Police observed two high power rifle casings on the floor of the truck and damage to appellant's truck, which corresponded to damage on decedent's van. They placed appellant under arrest.

After his arrest, appellant was kept in a detention cell at the Oxford Borough Police Station until 6:30 o'clock, A.M. During this time he had an altercation with a cellmate, damaged the cell, and slept. He was awakened at 6:30 o'clock and submitted to a neutron activation test. He was advised of his rights under *Miranda*[1] after which he gave an

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

exculpatory statement and signed consents for the search of his home and truck. Following these events appellant was again placed in a detention cell where he remained for another two hours. During this period the police, with help from David Blackburn, who had also been arrested in connection with the shooting, attempted unsuccessfully to find the murder weapon.

Shortly before noon, appellant was removed to the Avondale State Police Barracks where, after having been given food, he made a brief, oral inculpatory statement, which, inter alia, specifically disclosed the location of the rifle. With this information police were readily able to find the murder weapon in the cornfield where it had been hidden. Jones was arraigned at 3:00 o'clock, P.M. Two days later, while appellant was in prison, he gave a written, inculpatory statement containing a full account of the shooting.

Prior to trial, appellant moved to suppress his several statements and the murder weapon. The trial court refused the applications to suppress, and these items of evidence were used at trial by the Commonwealth. Appellant argues that this was error.

Initially, he contends that police lacked probable cause to arrest him and that the evidence, therefore, was the product of an unlawful arrest. This is not a meritorious argument. Probable cause to arrest existed if, at the time appellant was detained by the police, the facts and circumstances known to them and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that appellant had committed the shooting. *Commonwealth v. Powers*, 484 Pa. 198, 201, 398 A.2d 1013, 1014 (1979). The test is not one of certainties but one of probabilities dealing with considerations of everyday life. *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). The facts known must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

■ In the instant case, there was probable cause to believe that appellant had killed or participated in the killing of the decedent. When police arrived at the decedent's home, they were given the number of appellant's license by decedent's brother, who together with other relatives of the decedent, knew that appellant's truck had been at the scene of the shooting and collision of vehicles. Appellant's damaged truck and the corresponding damage to the decedent's van suggested that the two vehicles had been in a collision. Additionally, two rifle casings were observed on the floor of the truck when appellant emerged therefrom.

■ We also reject appellant's contention that his statements and the consent to search his house and truck were given involuntarily. This argument is based on testimony that appellant became ill during the early morning questioning. The fact of illness did not alone compel a finding that consent had been given involuntarily. Illness is only one factor to be considered in assessing the totality of the circumstances surrounding the giving thereof. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Moore*, 454 Pa. 337, 311 A.2d 620 (1973); *Commonwealth v. Hunt*, 263 Pa.Super. 504, 398 A.2d 690 (1979). Other evidence supported the trial court's finding that appellant's statements and consents to search were voluntary. Moreover, the only statement given as a result of this original interrogation was exculpatory in nature, and the record does not disclose that incriminating evidence was found as a result of the subsequent search of appellant's house and truck.

We are constrained to agree with appellant that the oral statement made shortly before noon was the product of unnecessary delay between appellant's arrest and arraignment. Appellant was arrested and taken into custody at 2:10 o'clock, A.M., on August 21, 1976. He was not arraigned until 3:00 o'clock, P.M., almost thirteen hours later. The statement in which he revealed the location of the rifle was made shortly before noon, approximately ten hours following arrest.

534

■■■ Rule 130 of the Pennsylvania Rules of Criminal Procedure and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) required that appellant be taken before a magistrate for arraignment without unnecessary delay. This rule was designed "to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation before arraigning him." *Commonwealth v. Smith,* 472 Pa. 414, 418, 372 A.2d 761, 763 (1977); *Commonwealth v. Cherry,* 457 Pa. 201, 205, 321 A.2d 611, 613 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 587, 317 A.2d 588, 591 (1974). The Supreme Court has repeatedly said that "pre-arraignment delay is unnecessary unless required to administratively process an accused." *Commonwealth v. Eaddy,* 472 Pa. 409, 412, 372 A.2d 759, 760 (1977); *Commonwealth v. Smith,* supra; *Commonwealth v. Williams,* 455 Pa. 569, 573, 319 A.2d 419, 421 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 447, 311 A.2d 613, 614 (1973). See also: *Commonwealth v. Gasper,* 262 Pa.Super. 141, 146, 396 A.2d 685, 688 (1978). Before evidence will be suppressed on the grounds of unnecessary, pre-arraignment delay, the evidence must be reasonably related to the delay, and must be prejudicial to the defendant. *Commonwealth v. Williams,* supra. The Supreme Court has narrowed the relevant time frame to the time elapsing between arrest and securing the evidence, for it the unnecessary delay occurred after the evidence had been secured, the evidence was not related to the subsequent delay. *Commonwealth v. Williams,* 484 Pa. 590, 592, 400 A.2d 1258, 1259 (1979).

■■■ In the instant case, an initial delay occurred between appellant's arrest and his interrogation at or about 6:30 o'clock, A.M. It was caused, at least in part, because the investigating detective was engaged in interrogating other suspects. Cf. *Commonwealth v. Simmons,* 239 Pa.Super. 220, 362 A.2d 402 (1976). At 6:30 o'clock, A.M., appellant was taken from the detention cell, was interrogated, and was given a neutron activation test. He was then returned to his cell, where he was held while police continued their investigation. Thereafter, he was removed to the state

police barracks at Avondale, where he made an inculpatory statement shortly before noon. The delay between 6:30 o'clock and noon was unnecessary. During this period appellant was held while police made an additional investigation and conducted a search for the murder weapon. A confession which was the product of such delay should have been suppressed. *Commonwealth v. Smith*, supra.

During appellant's oral statement, made at or about noon, he divulged information identifying the location of the murder weapon. Whether the weapon should have been suppressed as the fruit of the improperly obtained statement is an issue which the trial court did not consider, for it found that the oral statement had not been the product of unnecessary delay.

David Blackburn, it will be recalled, had told the police of the general whereabouts of the weapon. He said that the rifle had been placed in the first row of a cornfield on Route 272 and that a handkerchief had been tied around a cornstalk to mark the spot. Despite this information, the search for the weapon had been unsuccessful. After appellant made his statement containing more specific information, police found the weapon in a cornfield adjacent to Route 272 and approximately three or four miles from the decedent's residence. Police testimony disclosed that the field in which the rifle was found would in any event have been searched before nightfall. It was conceded by the Commonwealth, however, that appellant's statement to the police "greatly facilitated the finding of the weapon".

In *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (1976), the Supreme Court held that where evidence showed that a murder weapon obtained as a result of illegal police activity would eventually have been discovered in the course of a lawfully conducted investigation, such evidence need not be excluded. To hold otherwise "would serve only to frustrate the objectives of the adjudicative process without providing any enhancement of that process." Id., 470 Pa. at 282, 368 A.2d at 630. See also: *Commonwealth v. Wideman*, 478 Pa. 102, 385 A.2d 1334 (1978).

536

■ Because the case must be remanded for a new trial, the trial court will have an opportunity to receive additional evidence and determine whether the finding of a murder weapon by the police was the result of the improperly obtained, oral statement from appellant. If so, the weapon must be suppressed. If, on the other hand, the weapon would have been found irrespective of appellant's statement and by virtue of a lawfully conducted police investigation, then the evidence need not be excluded and may be used by the Commonwealth. *Commonwealth v. Brown*, supra; *Commonwealth v. Wideman*, supra.

Upon remand, the trial court should also hear and determine whether appellant's written statement, given two days later, was obtained by exploiting the original improperly obtained statement or whether there had been an attenuation because of intervening time and circumstances. After appellant had been arraigned about 3:00 o'clock, P.M., on August 21, 1976, he was taken to and confined at the Chester County Prison. On August 23, 1976, two days later, he was interviewed in prison by two state policemen who first repeated to him the rights to which he was entitled under *Miranda*. At that time appellant voluntarily answered questions and signed a written statement.

■ This written statement was not rendered inadmissible ipso facto because a prior incriminating statement had been the product of an unnecessary arraignment delay. Cf. *Commonwealth v. Greene*, 456 Pa. 195, 317 A.2d 268 (1974); *Commonwealth v. Mitchell*, 445 Pa. 461, 285 A.2d 93 (1971). The question to be determined is "whether, granting [the] establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1965). See also: *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). This must be determined from the totality of the circumstances.

The judgment of sentence is vacated, a new trial is granted, and the case is remanded for further proceedings consistent with the foregoing opinion.