904 A.2d 905

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Allen WILEY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 2006.

Decided Aug. 23, 2006.

Grady John Gervino, Hugh J. Burns, Jr., Philadelphia Dist. Attorney's Office, for the Com., appellant.

Karl Baker, Defender Ass'n of Philadelphia, Lori Mach, Philadelphia, for Allen Wiley, appellee.

Before: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## ORDER

PER CURIAM:

Appeal dismissed as having been improvidently granted.

Justice NEWMAN files a dissenting statement.

Justice EAKIN files a dissenting statement.

Justice NEWMAN dissenting.

I respectfully dissent from the Majority of this Court in its decision to dismiss the above matter as improvidently granted. In particular, I feel that this case gives the Court an opportunity to clarify the law regarding the differences between the independent source doctrine and the inevitable discovery doctrine, as well as to confirm the validity of both doctrines.

The facts reveal that on March 11, 2003, Lawrence Thompson (Thompson) saw Appellee with a gun protruding from his waistband inside of Daniel's Restaurant, located near 900 Godfrey Avenue in Philadelphia. Thompson followed Appellee to a barbershop and immediately called 911 on his cell phone, described Appellee, and informed the police of his current location. Thompson then parked his car across from the barbershop and watched until the police arrived. Police office Edward Fidler (Officer Fidler) testified that he had received a radio call about a male matching Appellee's description carry-

ing a gun inside the barbershop at 906 Godfrey Avenue. Officer Fidler arrived at the shop, entered with his gun drawn, frisked Appellee, and discovered a black .22–caliber revolver loaded with eight live rounds. Approximately one and one-half minutes elapsed between the time of the radio call and the recovery of the gun. After the police arrested Appellee, Thomson approached the police and informed them that he had called 911.

Thereafter, Appellee was charged with Carrying a Firearm without a License, 18 Pa.C.S. § 6106, a third-degree felony, and Carrying a Firearm on Public Streets or Property in Philadelphia, 18 Pa.C.S. § 6108, a first-degree misdemeanor. Appellee filed a Motion to Suppress the physical evidence, alleging an illegal search and seizure and that no reasonable suspicion existed for Officer Fidler to make a *Terry* [1] stop.

On September 10, 2003, the Court of Common Pleas of Philadelphia County (trial court) denied the Motion to Suppress. After a bench trial, Appellee was convicted on both charges and sentenced to a term of two to six months' incarceration, followed by a concurrent three years of reporting probation. Appellee appealed, claiming that the trial court erred in denying his Motion to Suppress.

On August 23, 2004, the Superior Court, in a published Opinion, vacated the sentence and remanded. *Commonwealth v. Wiley*, 858 A.2d 1191 (Pa.Super.2004). Specifically, the Superior Court found that Officer Fidler did not have reasonable suspicion to justify the search because the caller was, at all relevant times, anonymous. *Id.* at 1194–95 (citing *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997), and *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997)). Specifically, the Superior Court cited *Hawkins* for the proposition that an anonymous call describing a person engaged in criminal activity at a specified location is, by itself, not sufficient reasonable suspicion to perform a *Terry* stop. Although it has been argued that there should be a "firearms exception," this Court has explicitly rejected on constitutional

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

grounds that the degree of danger from armed criminals justifies a *Terry* stop. *Id.*; *see also Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Accordingly, the Superior Court held that the search was unconstitutional, as Officer Fidler did not have any information in his possession at the time of his search to give him reasonable suspicion. The court emphasized that reasonable suspicion is to be determined based on information known to police before a detention and/or search, and, therefore, Mr. Thompson's conduct in identifying himself to the arresting officer after Appellee's arrest was irrelevant to the inquiry. *Wiley,* 858 A.2d at 1196 (citing *J.L.,* 529 U.S. at 271, 120 S.Ct. 1375) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").

The Superior Court focused on the fact that the additional information as to Mr. Thompson's identity was wholly irrelevant because it came after the fact of the arrest. However, the independent source and inevitable discovery doctrine exist to allow the admission of evidence where no deterrent effect would be achieved from the illegal arrest or search because that evidence would have otherwise been seized lawfully. Presently, the Superior Court addressed the Commonwealth's claim of inevitable discovery in a footnote

> Before concluding, we will briefly address the Commonwealth's argument that the seizure was lawful pursuant to the "inevitable discovery" doctrine. **"The inevitable discovery doctrine, or independent source rule,** states that illegally seized evidence may be admissible, if the prosecution can demonstrate that the evidence in question was procured from an independent origin. **Application of the 'independent source doctrine'** is proper only in the very limited circumstances where the 'independent source' is truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered." *Commonwealth v. Lehman,* 820 A.2d 766, 771 (Pa.Super.2003) (citations omitted).

The Commonwealth argues that "as soon as Officer Fidler had reemerged from the barbershop and placed [Appellee] in his police car, Mr. Thompson went up to the officer and identified himself as the person who had made the 911 call. Thus, it is clear that had Officer Fidler not immediately run into the barbershop, or had reemerged from the barbershop without detaining and arresting [Appellee], Mr. Thompson would have approached him, identified himself, and personally provided him with the information that would have warranted the investigatory stop and protective frisk. This, of course, would have led to the discovery of the gun." Commonwealth's Brief at 10–11.

**In our view, the Commonwealth has not identified an actual "independent source" so much as it has identified an hypothetical, alternate reality under which the seizure would have been lawful.** This claim fails.

*Wiley,* 858 A.2d at 1197 n. 5 (emphasis added). As can be seen, the Superior Court spoke of an independent source but did not address the true inevitable discovery exception.[2]

Presently, the Commonwealth argues that the Superior Court erroneously applied the independent source exception rather than the inevitable discovery exception to the exclusionary rule. Specifically, the Commonwealth contends that the Superior Court created a hybrid test, which erroneously denied the Commonwealth's argument that the evidence would have been inevitably discovered, although not from an independent source. I agree that the Superior Court erred in applying an independent source analysis to the instant matter, even though it acknowledged that the Commonwealth argued

**2.** I note that the record is not developed with regard to the inevitable discovery doctrine and is, instead, an argument of the Commonwealth that assumes Thompson would have immediately revealed himself to Officer Fidler had Officer Fidler not immediately rushed into the barbershop. However, as the trial court ruled in the Commonwealth's favor and denied the Motion to Suppress, the Commonwealth did not have the opportunity or need to develop the argument at that level. The Superior Court is correct in stating that the search, as conducted, was unconstitutional; however, I would remand to the trial court for further findings of fact as they relate to the applicability of the inevitable discovery exception and allow the Commonwealth to develop its argument in this regard.

for an alternate reality where the evidence would have been inevitably discovered. Moreover, that error has the danger of being repeated due to the obfuscation by various courts of these two similar but distinct rules. Part of the Superior Court's confusion stems from the hybrid definition used by this Court in *Melendez*. We have never truly adopted an inevitable discovery exception. Rather, the decisions, as noted by the Superior Court, apply a hybrid definition with the analysis incorporating pieces of both tests.

This Court in *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 230 (1996) stated that "[t]he inevitable discovery rule, sometimes referred to as the 'independent source rule,' is that if the prosecution can demonstrate that the evidence in question was procured from an independent origin, such evidence is admissible." Moreover, *Melendez* relied in part on *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993), in which this Court discussed the independent source and inevitable discovery doctrine and implicitly adopted both. *Id.* at 255 (citing *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)).

*Melendez*, in fact, discussed the independent source doctrine and held that evidence was tainted when an independent source would not have discovered the evidence had it not been for the initial illegal stop by the police. Essentially, this Court held that the police may not create their own exigent circumstances or independent source if it is predicated upon illegal police conduct. However, despite labeling the exception in question as one of inevitable discovery, the *Melendez* Court proceeded to discuss and analyze the independent source exception.

In the case *sub judice*, the Superior Court also couched an independent source analysis in terms of the inevitable discovery exception. However, the inevitable discovery exception actually requires no independent source.[3] Specifically, as stated by the Third Circuit

3. Part of the confusion concerning the tests may lie in the fact that the independent source exception, which does require a separate entity or source from the illegal one, contains the implicit requirement that the

Accordingly, under the independent source doctrine, evidence that was **in fact** discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible. In contrast, the inevitable discovery doctrine, applied in *Nix [v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)], permits the introduction of evidence that **inevitably would have** been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful. The independent source and inevitable discovery doctrines thus differ in that the former focuses on what actually happened and the latter considers what would have happened in the absence of the initial search.

*United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir.1992); *see also Murray, supra.*

In federal courts, *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), set forth the standard for inevitable discovery.[4] Specifically

If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

*Id.* at 444, 104 S.Ct. 2501 (citing *United States v. Matlock*, 415 U.S. 164, 178, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)) (footnote deleted).

Without labeling it as such, this Court adopted a type of inevitable discovery in *Commonwealth v. Brown*, 470 Pa. 274,

independent source would have led to the inevitable discovery of the evidence. However, the inevitable discovery exception applies, among other reasons, when the same arresting or searching officer would have lawfully discovered the evidence without the tainted source or tainted circumstances.

4. As noted in *Melendez, supra,* this Court has stated that the Pennsylvania Constitution offers greater privacy rights to its citizens than the United States Constitution. "[O]ur past cases have made it clear that we place a greater importance on privacy under the Pennsylvania Constitution than have recent federal cases under the United States Constitution[.]" *Melendez,* 676 A.2d at 231.

368 A.2d 626 (1976). In particular, we stated that where, "the admission of the proffered evidence does not represent an exploitation of the unlawful police practices[,] the exclusion of relevant testimony would serve only to frustrate the objectives of the adjudicative process without providing any enhancement of that process." *Id.* at 630 (citing *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Commonwealth v. Cephas,* 447 Pa. 500, 291 A.2d 106 (1972); *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967)). "Where the evidence obtained as the result of illegal police activity would have been discovered in the course of a lawfully conducted investigation, no purpose is served in applying the exclusionary rule." *Brown,* 368 A.2d at 631. However, the *Brown* Court went on to discuss inevitable discovery in the terms of an independent source.

In *Commonwealth v. Wideman,* 478 Pa. 102, 385 A.2d 1334 (1978), this Court held that, in a prosecution for murder of the second degree, evidence of the inevitability· of discovery of a murder weapon was insufficient to purge the taint of an illegal confession, from which the police obtained information of the whereabouts of the weapon, so as to make the weapon admissible into evidence. In fact, "[i]n *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), we held that evidence which would inevitably have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. The burden of proving such inevitable discovery rests with the prosecution." *Wideman,* 385 A.2d at 1336 (citing *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975)) (citations modified). The *Garvin* Court noted that:

> [a]lthough we agree with appellant as to the illegality of the arrest we must disagree with his contention that the identifications must be suppressed. No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusers. Thus, we conclude that the only effect of the illegal

arrest was to hasten the inevitable confrontation and not to influence its outcome.

*Garvin,* 293 A.2d at 37.

Moreover, the Superior Court has previously adopted the inevitable discovery exception. In *Commonwealth v. Ingram,* 814 A.2d 264 (Pa.Super.2002), *petition for allowance of appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003), the Superior Court considered the legality of evidence where a police officer had reasonable suspicion to frisk a defendant but illegally questioned the defendant as to the contents of his pocket, resulting in the discovery of a gun and drugs. The Superior Court analyzed the evidence by asking what would have happened if the police officer had not illegally questioned the defendant about the nature of an item in his pocket. Specifically, the Superior Court found that the officer would have continued to, lawfully, frisk the defendant, and would have ultimately discovered a gun in the defendant's pocket leading to a search incident to arrest and a full search yielding the seized drugs. *Id.* at 272.

Presently, the trial court found that the caller was not anonymous by virtue of the fact that he appeared in court providing his name and address. Thus, the trial court concluded that Officer Fidler had the requisite reasonable suspicion by virtue of these curative facts, and that an anonymous call alone does not negate the chance of establishing reasonable suspicion. The Superior Court properly noted that it would be a fallacy to allow the Commonwealth to generate information giving rise to probable cause or reasonable suspicion after the fact. *Wiley,* 858 A.2d at 1197. Accordingly, the Superior Court stated that, although it is possible for the searching officer to not have all the facts, e.g., when a dispatcher has the full facts but only outlines the suspect and location to an officer, somebody in the police department must have probable cause or reasonable suspicion before the stop.

Although the Superior Court properly reasons that the stop was, at all times, based upon an anonymous phone call, thus making the seizure devoid of reasonable suspicion, the Superi-

or Court failed to address that the Commonwealth did not **generate** the potentially curing information after the fact. Rather, the caller, who had stayed at the scene to identify himself and assist with any further information, freely gave it at the first available opportunity. In all inevitable discovery cases, the actual search or seizure conducted is, at all times, improper. However, the doctrine exists as a manner of preventing the exclusion of evidence where the evidence would have been otherwise discovered.

The Commonwealth urges us to consider that, had Officer Fidler not immediately entered the barbershop, the anonymous caller would have removed the unreliable cloak of anonymity and Officer Fidler would have, inevitably, proceeded with the frisk and arrest. Thus, pursuant to the inevitable discovery exception to the exclusionary rule, the evidence seized should be admitted and the Motion to Suppress should be denied. For the reasons outlined above, I would allow the Commonwealth to further develop this argument at the trial court level and would remand for proceedings to examine the applicability of the inevitable discovery exception to the instant matter.

Justice EAKIN dissenting.

I respectfully dissent from the decision to dismiss this matter as improvidently granted. I believe this case presents the Court with the opportunity to clarify the distinctions between the inevitable discovery exception and independent source exception to the exclusionary rule.