J-S71027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH D. BORRAJO, | : | |
| | : | |
| Appellant | : | No. 1331 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0008420-2017

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 12, 2020**

Joseph D. Borrajo (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of theft by unlawful taking, receiving stolen property, and criminal conspiracy.[1]  We affirm.

We adopt without repeating the trial court's comprehensive recitation of the underlying facts and procedural history.  ***See*** Trial Court Opinion, 7/10/19, at 1-8.  In this timely appeal, Appellant presents the following issues for our review:

A. Whether Appellant's cell site location records should have been suppressed pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

B. Whether the Honorable Trial Court erred when it imposed an illegal sentence of restitution in the amount of $2,199.99 when

---

[1] 18 Pa.C.S.A. §§ 3921(a), 3925(a), 903(a).

the jury found Appellant guilty of theft, receiving stolen property, and conspiracy to commit receiving stolen property in the amount of less than $2,000?

C. Whether the Honorable Trial Court erred when it imposed a sentence of $2,199.99 in restitution when said amount was not supported by the record?

Appellant's Brief at 4.

Appellant first argues that the trial court erred in denying his motion to suppress the evidence of his historical cell phone site location information (the cell site evidence), because the evidence was unlawfully obtained without a search warrant, in contravention of the decision of the United States Supreme Court in **Carpenter v. United States**, 138 S. Ct. 2206 (2018). **See** Appellant's Brief at 12-22. The **Carpenter** Court held that law enforcement must first obtain a search warrant supported by probable cause in order to obtain historical cell site location information from wireless service providers, absent a specific exception to the warrant requirement. **Carpenter**, 138 S. Ct. at 2221. According to Appellant, suppression of the cell site evidence was necessary where:

(1) Detective John Burke initially obtained the cell site evidence, on July 12, 2017, pursuant to the Wiretapping and Electronic Surveillance Control Act, **see** 18 Pa.C.S.A. § 5743(c), and the Stored Communications Act, **see** 18 U.S.C.A. § 2703 (collectively referred to as "the Wiretap Acts"), which permit a government entity to obtain disclosure of the records of a an electronic communications service provider based on a showing that there are specific and articulable facts that demonstrated reasonable grounds for believing that the

records are material to an ongoing investigation, which is a lesser standard than that mandated by **Carpenter**;[2] and

(2) The fact that Detective Burke later obtained a search warrant for the cell site evidence following **Carpenter** is unavailing, as the Commonwealth cannot cure a prior illegality to obtain evidence in this manner.

**See** Appellant's Brief at 12-19, 22.  Additionally, Appellant contends:

By the time[] [that] the Commonwealth sought the search warrant, it had information from the cell[] [site evidence, *i.e.*, which the police had previously obtained via the Wiretap Acts Order,] contradicting the complainant's statements as to Appellant's contact with her the day of the burglary.  The complainant's assertions that Appellant was contacting her [on] the day of the burglary to ascertain her location were used to establish probable cause for the warrant.

**Id.** at 19.

We review Appellant's claim mindful that:

our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*.  Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.  Our scope of review of suppression

---

[2] We note that both the Commonwealth and trial court concede that Detective Burke's *initial* acquisition of the cell site evidence, *i.e.*, pursuant to a court order issued on July 12, 2017, prior to the **Carpenter** decision and under the standards articulated in the Wiretap Acts (the Wiretap Acts Order), was unlawful in the wake of **Carpenter**, because it did not require a probable cause determination.  Thus, the issue becomes whether Detective Burke's subsequent acquisition of the cell site evidence, pursuant to the search warrant issued on June 27, 2018, should have been suppressed.

rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

Appellant additionally contends that the affidavit of probable cause that Detective Burke submitted in support of the search warrant (probable cause affidavit) was defective, rendering the warrant invalid. ***See*** Appellant's Brief at 19-21. According to Appellant, the probable cause affidavit contained a material misstatement of fact; namely, that Appellant had "repeatedly" contacted the complainant by cell phone on the day of the burglary in an attempt to ascertain the complainant's whereabouts. ***See id.***

Where a defendant files a motion seeking to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); ***see also id.***, Comment (stating that the standard of proof is a preponderance of the evidence). Moreover, "a defendant at a suppression hearing has the right to test the veracity of the facts recited in the affidavit in support of probable cause." ***Commonwealth v. James***, 69 A.3d 180, 187 (Pa. 2013) (citation omitted). When testing the veracity of facts recited in an affidavit, a defendant must make "a substantial preliminary showing [that] the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit." ***Id.*** at 188 (citation omitted). Additionally, our Pennsylvania Supreme Court

has cautioned that a "grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." ***Commonwealth v. Jones***, 988 A.2d 649, 655-56 (Pa. 2010) (citation and ellipses omitted).

In its opinion, the trial court thoroughly addressed Appellant's claims and determined that although ***Carpenter*** indisputably rendered the initial receipt of the cell site evidence unlawful, suppression of this evidence was not necessary because:

(1) Detective Burke lawfully obtained the cell site evidence after submitting the probable cause affidavit, which contained only information that the police had obtained *prior* to their initial acquisition of the cell site evidence via the Wiretap Acts Order. ***See*** Trial Court Opinion, 7/10/19, at 9-10;

(2) Pursuant to the "independent source doctrine,"[3] the Commonwealth lawfully obtained the cell site evidence via

---

[3] This Court has explained the doctrine:

[W]here the Commonwealth can demonstrate that the allegedly tainted evidence was procured from an independent origin – a means other than the tainted source – the evidence will be admissible. The test for whether there is an independent source is as follows: (1) whether the decision to seek a warrant was prompted by what was seen during the initial [warrantless acquisition of evidence]; and (2) whether the magistrate was informed at all of the information.

***Commonwealth v. Beck***, 34 A.3d 111, 114 (Pa. Super. 2011) (citations and quotation marks omitted); ***see also Commonwealth v. Wiley***, 904 A.2d 905, 908 (Pa. 2006) (stating that "under the independent source doctrine,

- 5 -

the search warrant, which was supported by probable cause and bore no taint of the prior illegality. **See id.**; and

(3)     The probable cause affidavit did not contain a material misstatement of fact; rather, the record reveals that Appellant, in fact, had repeatedly inquired as to the complainant's whereabouts on the day of the robbery. **See id.** at 12-15.

The trial court's rationale is supported by the record and prevailing law, and we agree with its determination. Thus, we affirm on this basis in rejecting Appellant's first issue, **see id.**, with the following addendum.

Contrary to Appellant's claim, the record reflects that Detective Burke, when submitting the probable cause affidavit, did not improperly rely upon facts discovered via the Wiretap Acts Order. Rather, Detective Burke testified at the suppression hearing that he "include[d] the *exact same* information" in the probable cause affidavit that he had previously "included [when he] applied for the [Wiretap Acts] Order in July of 2017[.]" N.T., 9/6/18, at 51 (emphasis added); **see also id.** at 52 (Detective Burke explaining that he did not "retype the Search Warrant application"; rather, he "cut and pasted" the exact same information that he had previously submitted in applying for the

---

evidence that was in fact discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible." (citation omitted)). The independent source doctrine is intended to "put[] the police in the same, not a *worse*, position [than] they would have been in if no police error or misconduct had occurred." **Nix v. Williams**, 467 U.S. 431, 434 (1984) (emphasis in original).

Wiretap Acts Order).[4]  Nor did Detective Burke engage in any misconduct.

*See James*, 69 A.3d at 188.  Rather, he initially obtained the Wiretap Acts

Order under the then-lawful standards under the Wiretap Act.  Thereafter, he

submitted the probable cause affidavit in response to an intervening change

in the law; the affidavit did not contain any false statements and was not

tainted by evidence discovered via the prior Wiretap Acts Order.  Accordingly,

Appellant's first issue is without merit.

We next address Appellant's second and third issues together, as they

are related.  Appellant contends that the trial court imposed an illegal

restitution order, in the amount of $2,199.99, as part of his sentence, where

the amount was unsupported by the record and contravened the findings of

the jury.  *See* Brief for Appellant at 23-29.  Specifically, Appellant argues that

the jury found that (1) the value of the property he stole was $200 or more,

but did not exceed $2,000; and (2) Appellant was only responsible for $200,

the value of the stolen items that he and his codefendant sold to Gold Rush,

LLC, which the owner of eventually returned to the complainant.[5]  *See id.* at

---

[4] Further, if Detective Burke had the benefit of the **Carpenter** decision at the time he applied for the Wiretap Acts Order in July 2017, he likely would have (1) applied for a search warrant, rather than a court order, to obtain the cell site evidence; and (2) submitted the same information available to him when he subsequently submitted the probable cause affidavit, which a neutral magistrate found established probable cause.

[5] The remaining items that Appellant stole from the complainant's home were never returned to her.

23, 26; **see also id.** (pointing out that the jury acquitted Appellant of the charges of burglary and criminal trespass). Thus, Appellant asserts, "[s]ince the items Appellant was convicted of stealing were returned, the amount of restitution should be limited to $200[,] payable to Gold Rush[,] LLC[.]" **Id.** at 23. We disagree.

Initially, we agree with Appellant that his claim is a challenge to the legality, and not the discretionary aspects, of his sentence. **See In the Interest of M.W.**, 725 A.2d 729, 731 n.4 (Pa. 1999) (distinguishing the respective claims and explaining that "there has been some confusion as to whether an appeal of an order of restitution implicates the legality or the discretionary aspects of a particular sentence in a criminal proceeding."). In interpreting the **M.W.** Court's instruction, this Court has stated:

> According to the High Court, when a challenge is directed to the trial court's statutory authority to impose restitution, it concerns the legality of the sentence. **Id.** at 731. A sentencing court has statutory authority to impose restitution under [18 Pa.C.S.A.] § 1106(a) when the defendant committed a crime, the victim suffered damage to person or property, and there exists a direct causal nexus between the crime of which defendant was convicted and the loss or damage suffered by the victim. **See** 18 Pa.C.S. § 1106(a). Thus, a challenge to the legality of sentence is presented when the defendant claims that the trial court lacked statutory authority to impose restitution because the Commonwealth failed to establish one or more of the requirements of section 1106(a). **See e.g., In re M.W.**, **supra** at 731 (holding that a claim that the juvenile court lacked statutory authority to impose restitution in light of the Commonwealth's failure to prove that M.W. caused any property damage implicated the legality of sentence); … **Commonwealth v. Poplawski**, 2017 PA Super 78, 158 A.3d 671, 674-75 (Pa. Super. 2017) (treating defendant's claim of no causal nexus

between the offense for which he was convicted and the restitution award as a legality of sentence claim)….

*Commonwealth v. Weir*, 201 A.3d 163, 172-73 (Pa. Super. 2018); *cf. id.* at 174 (holding that the appellant's challenge to the restitution component of his sentence as being "unsupported by the record" implicated the discretionary aspects of the sentence, not its legality, where "[a]ppellant does not claim that there is no direct causal connection between his conviction of criminal mischief and the costs" to repair the damage appellant inflicted upon the victim's property).

Here, Appellant's claim implicates the legality of his sentence,[6] since he argues that the sentencing court imposed an amount of restitution that does not bear a causal connection to the actual damages caused by Appellant's criminal conduct. *See* Brief for Appellant at 24. Additionally, Appellant relies upon this Court's decision in *Commonwealth v. Reed*, 543 A.2d 587 (Pa. Super. 1988), where we stated, "In a case of theft by receiving stolen property, a reviewing court will not countenance a sentence provision which requires restitution for property which the Commonwealth has not proven was either stolen or received by the defendant." *Id.* at 589 (citation, quotations and brackets omitted).

---

[6] Where such a question of law is raised, our standard of review is plenary. *Commonwealth v. Rotola*, 173 A.3d 831, 834-35 (Pa. Super. 2017).

Upon review, we find no record support for Appellant's general speculation that the jury determined he was only responsible for $200 worth of stolen items sold to Gold Rush, LLC, particularly where the remaining items that Appellant stole from the complainant's home were never recovered.[7] Additionally, the trial court properly concluded that Appellant's "interpretation of the jury's finding with regard to the value of the property stolen cannot form the basis for a restitution order. The amount of restitution is to be determined by the record, not speculation as to what the jury believed." Trial Court Opinion, 7/10/19, at 15-16.

Further, Appellant's reliance upon **Reed**, **supra**, is unavailing. The appellant in **Reed** was convicted of theft by receiving stolen property worth approximately $400, but he was not charged with committing the burglaries in which the stolen items, worth a total of approximately $12,000, had been taken. **Reed**, 543 A.2d at 588. The sentencing court ordered the appellant to pay restitution for the total value of all of the items stolen during the burglaries. **Id.** This Court held that the restitution award was improper, because there was no causal connection between the victim's total losses and the small amount of stolen property the appellant had received. **Id.** at 589. By contrast, in the instant appeal, Appellant was convicted of the underlying

_____

[7] Indeed, the jury convicted Appellant for theft of the items stolen from the complainant's residence, and Appellant does not challenge the sufficiency of the evidence supporting his convictions.

theft of the complainant's property (as well as theft by receiving stolen property and criminal conspiracy). ***Cf. id.*** at 588. Moreover, the record contains ample evidence for the trial court to find a causal connection between Appellant's actions and the losses sustained by the complainant and Gold Rush, LLC. Accordingly, Appellant's second and third issues lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/20